**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ─────────────────────── : | |
| MICHELLE ROCHE, Individually : | |
| and as Class Representative, : | |
| : | Civil No. 13-3933 (NLH/KMW) |
| Plaintiff, : | |
| : | **OPINION** |
| v. : | |
| : | |
| AETNA, INC., AETNA HEALTH, : | |
| INC. (a NJ corp.), AETNA : | |
| HEALTH INSURANCE CO., AETNA : | |
| LIFE INSURANCE CO., and THE : | |
| RAWLINGS COMPANY, LLC, : | |
| : | |
| Defendants. : | |
| ─────────────────────── | |

**APPEARANCES:**

KLEHR HARRISON HARVEY BRANZBURG LLP
By:   Charles A. Ercole, Esq.
      Carianne P. Torrissi, Esq.
457 Haddonfield Road, Suite 510
Cherry Hill, New Jersey 08002

and

KANNEBECKER LAW
By:  Charles Kannebecker, Esq.
104 West High Street
Milford, Pennsylvania 18337
      Counsel for Plaintiff

LOWEY DANNENBERG COHEN & HART, P.C.
By:  Uriel Rabinovitz, Esq.
      Richard W. Cohen, Esq. (pro hac vice)
      Gerald Lawrence, Esq. (pro hac vice)
One North Broadway, Suite 509
White Plains, New York 10601-2310
      Counsel for Defendants

**HILLMAN**, United State District Judge:

This suit concerns alleged violations of New Jersey's insurance regulation laws brought by Plaintiff Michelle Roche ("Plaintiff" or "Roche") both individually and as a putative class representative against Defendants Aetna, Inc., Aetna Health, Inc., Aetna Health Insurance Co., and Aetna Life Insurance Co. (collectively, the "Aetna Defendants") and The Rawlings Company, LLC ("Rawlings" and collectively with the Aetna Defendants, "Defendants"). Presently before the Court is Defendants' Motion for Summary Judgment ("Defendants' Motion" or "Defs.' Mot.") [Dkt. Nos. 12 & 60]. For the reasons set forth below, Defendants' Motion will be granted.

## I.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]

Roche was involved in a car accident on January 19, 2007 in Pike County, Pennsylvania. (Defs.' Statement of Material Facts ("DSMF") [Dkt. No. 13] ¶¶ 1-2.) The accident caused Roche serious injuries, and in the course of treatment for her injuries, she received benefits from her health insurance policies. (Compl. [Dkt. No. 1-1] ¶ 14.)

---

[1] The Court recites those facts relevant to deciding the pending motion for summary judgment, and resolves any disputed facts or inferences in favor of Roche, the nonmoving party. Trinity Indus., Inc. v. Chi. Bridge & Iron Co., 735 F.3d 131, 134-35 (3d Cir. 2013).

At the time, Roche was a participant in two different health insurance plans. (DSMF ¶¶ 4–5; Pl.'s Resp. to DSMF ("PSMF") [Dkt. No. 35-5] ¶¶ 4–5.) The first plan was a governmental health plan funded by the State of New Jersey State Health Benefits Program and administered by Aetna Life Insurance Company (the "State Plan"). (DSMF ¶ 5; PSMF ¶ 5.) This policy was issued through Roche's husband's employment. (Pl.'s Opp. [Dkt. No. 35] at 5.) Roche received $86,601.72 in benefits from the State Plan. (DSMF ¶ 12.)

The second plan was an employee group health plan sponsored by Bank of America, N.A., also administered by Aetna Life Insurance Company (the "B.O.A. Plan"). (DSMF ¶ 4; PSMF ¶ 4.) Roche received $1,473.57 in benefits from the B.O.A. Plan. (DSMF ¶ 13.) The B.O.A. Plan is a covered plan under the Employee Retirement Income Security Act of 1974 ("ERISA"), Pub. L. No. 93-406, 88 Stat. 829 (codified as amended at 29 U.S.C. § 1001, et seq.); the State Plan is a non-ERISA plan. (See Pl.'s Opp. at 5 & n.2; Def.'s Mot. Br. [Dkt. No. 14] at 4.)

On December 2, 2008, Roche commenced a civil action in the Court of Common Pleas of Pike County, Pennsylvania against the alleged tortfeasor in her car accident and his insurer. (DSMF ¶ 3.) Roche eventually recovered money in that action pursuant to a settlement. (Compl. ¶¶ 89–90.) Beginning in September 2010, Rawlings contacted Roche's personal injury attorney

asserting that it had a right to reimbursement of any eventual recovery made in the lawsuit through a series of letters to both Roche's attorney and the defendant's attorney in her personal injury suit. (DSMF ¶ 11; PSMF ¶ 11; Van Natta Decl. Ex. 1 [Dkt. No. 11-1]; Kannebecker Decl. Ex. 1-3 [Dkt. No. 35-4]; Roche Decl. [Dkt. No. 35-2] ¶ 2.) As a result of these letters, Roche feared that if she did not pay Defendants, she would be sued, lose her health insurance, or suffer a negative impact on her credit score. (Roche Decl. ¶ 3.) Based on those fears, in January 2013, Roche authorized payment of $88,075.29 for reimbursement of the benefits received under her State Plan and B.O.A. Plan. (DSMF ¶ 14; Roche Decl. ¶ 4.) Subsequently, Rawlings remitted a check for $306.66 for an overpayment due to an adjustment in a paid claim. (DSMF ¶ 15; Van Natta Decl. [Dkt. No. 11] ¶ 7; Kannebecker Decl. Ex. 4.) At no time did Defendants sue Roche, Roche's tortfeasor, or appear as an intervenor in her personal injury lawsuit. (DSMF ¶ 16; PSMF ¶ 16.)

On January 25, 2013, Roche along with two others filed a complaint against the Defendants in the New Jersey Superior Court, Law Division, Atlantic County (the "Minerley Action"). (See Minerley Action Original Compl. [Dkt. No. 1-1, Civ. No. 13-1377].) The Minerley Action was removed to this Court as Civil Action No. 13-1377, and the complaint was subsequently amended

to remove Roche from the case.  (See Minerley Action Notice of Removal [Dkt. No. 1, Civ. No. 13-1377]; Minerley Action First Am. Compl. [Dkt. No. 15, Civ. No. 13-1377].)

On May 28, 2013, Roche filed the instant case in the New Jersey Superior Court, Law Division, Atlantic County.  (See Compl.)  Roche complains on behalf of herself and a putative class of persons covered by non-ERISA governmental health plans that the recovery actions by Defendants violate New Jersey's anti-subrogation laws – codified at N.J.S.A. 2A:15-97 and N.J.A.C. 11:4-42.10 – as well as the New Jersey Consumer Fraud Act ("NJCFA"), N.J.S.A. 56:88-19, and other common law torts. (See generally Compl.)  Roche's suit is specifically targeted toward the efforts undertaken by Defendants to obtain subrogation for benefits she received under the State Plan only, and not under the B.O.A. Plan.  (Pl.'s Opp. at 5 n.2.)

Defendants removed this action on June 25, 2013.  Notice of Removal [Dkt. No. 1].  Roche attempted to remand this action, and the motion was granted in part by Judge Joseph H. Rodriguez[2] to permit jurisdictional discovery to determine if the home state exception to jurisdiction under the Class Action Fairness

---

[2] This matter was reassigned from Judge Rodriguez to Judge Joseph E. Irenas on July 28, 2015.  See Order, July 28, 2015 [Dkt. No. 58].  Judge Irenas unfortunately passed away in October 2015, at which point this matter was transferred to the undersigned.  See Order, Oct. 29, 2015 [Dkt. No. 61].

Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (relevant
portion codified at 28 U.S.C. § 1332(d)) applied. <u>See</u> <u>Roche v.</u>
<u>Aetna Health Inc.</u> (<u>Roche I</u>), Civ. No. 13-3933 (JHR), 2014 WL
1309963 (D.N.J. Mar. 31, 2014), <u>modified on reconsideration</u>,
<u>Roche v. Aetna Health Inc.</u> (<u>Roche II</u>), 2014 WL 7179614 (D.N.J.
Dec. 17, 2014).  While the motion for remand was pending, the
instant summary judgment motion was filed and briefed.  In
granting jurisdictional discovery, Judge Rodriguez also
dismissed without prejudice the summary judgment motion with the
right to reinstate the motion by letter.  (Order, Mar. 31, 2014
[Dkt. No. 43].)

Roche informed this Court by way of letter on July 2, 2015
that she was withdrawing her request for remand and urged the
Court to proceed with the litigation.  (<u>See</u> Ercole Letter [Dkt.
No. 56].)  Defendants then requested the Court reinstate the
motion for summary judgment.  (<u>See</u> Cohen Letter [Dkt. No. 57].)[3]
The motion was subsequently reinstated.

## II.  JURISDICTION

Roche has brought suit as a representative of a putative
class on issues of New Jersey law.  It has already been
determined that no federal question jurisdiction exists, and so

---

[3] Both letters also included a discussion of supplemental
authority relevant to the Minerley Action, but irrelevant here.

the only means of jurisdiction in this Court is under CAFA.  See
Roche, 2014 WL 1309963, at *2.  "CAFA provides federal courts
with jurisdiction over civil class actions if [1] the 'matter in
controversy exceeds the sum or value of $5,000,000,' [2] the
aggregate number of proposed class members is 100 or more, and
[3] any class member is a citizen of a state different from any
defendant." Vodenichar v. Halcon Energy Props., Inc., 733 F.3d
497, 503 (3d Cir. 2013) (citing 28 U.S.C. § 1332(d)(2),
(d)(2)(A), (d)(5)(B)).

Each requirement is satisfied here.  Roche pleads that the
class is comprised of over 100,000 members in New Jersey.
(Compl. ¶ 23.)  Defendants further aver that the putative class
would consist of citizens of other states who receive benefits
under New Jersey governmental plans.  (Notice of Removal ¶ 43.)
Minimal diversity also exists as Roche is a New Jersey citizen,
and at least Defendant Aetna Inc. is a Pennsylvania corporation
with its principal place of business in Hartford, Connecticut.
(Compl. ¶ 2; Notice of Removal ¶ 42.)[4]  Finally, the amount in

---

[4] The Court notes that the Complaint fails to adequately plead
the citizenship of Rawlings – an LLC.  "[T]he citizenship of
partnerships and other unincorporated associations is determined
by the citizenship of its partners or members.  Accordingly, the
citizenship of an LLC is determined by the citizenship of its
members." Zambelli Fireworks Mfg. Co. v. Wood, 592 F.3d 412,
420 (3d Cir. 2010) (citations omitted).  Roche does not tell
this Court the citizenship of any of the members of Rawlings,
but the minimal diversity requirements under CAFA are satisfied

controversy excess $5 million based on past, present, and potential future actions by Rawlings in seeking subrogation under New Jersey governmental health insurance plans administered by Aetna.  (Notice of Removal ¶¶ 46-49.)

Accordingly, this Court will exercise jurisdiction over the class action claims pursuant to 28 U.S.C. § 1332(d) and exercise supplemental jurisdiction over additional state law claims of Roche personally pursuant to 28 U.S.C. § 1367.

**III. STANDARD OF REVIEW**

Summary judgment is appropriate where the Court is satisfied that "there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986).  A genuine dispute of material fact exists only if the evidence is such that a reasonable jury could find for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  When the Court weighs the evidence presented by the parties, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  Id. at 255.

---

without this Court being fully apprised of the citizenship of Rawlings.

The moving party bears the burden of establishing that no genuine issue of material fact remains. *See* Celotex, 477 U.S. at 322-23. A fact is material only if it will affect the outcome of a lawsuit under the applicable law, and a dispute of a material fact is genuine if the evidence is such that a reasonable fact finder could return a verdict for the nonmoving party. *See* Anderson, 477 U.S. at 252. Even if the facts are undisputed, a disagreement over what inferences may be drawn from the facts precludes a grant of summary judgment. Ideal Dairy Farms, Inc. v. John Labatt, Ltd., 90 F.3d 737, 744 (3d Cir. 1996).

The nonmoving party must present "more than a scintilla of evidence showing that there is a genuine issue for trial." Woloszyn v. Cty. of Lawrence, 396 F.3d 314, 319 (3d Cir. 2005). Further, the nonmoving party must come forth with affidavits and evidence in support of their position; merely relying on the pleadings and the assertions therein is insufficient to demonstrate a genuine issue of material of fact on a motion for summary judgment. Celotex, 477 U.S. at 324; *see also* Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001) (citing Fed. R. Civ. P. 56(e) and Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986)). The court's role in deciding the merits of a summary judgment motion is to determine whether there is a genuine issue for trial, not to determine the

credibility of the evidence or the truth of the matter.
<u>Anderson</u>, 477 U.S. at 249.

Where the factual record has not yet been developed, as
here, plaintiffs are permitted to "show by affidavit or
declaration that, for specified reasons, it cannot present facts
essential to justify its opposition." Fed. R. Civ. P. 56(d).
The declaration "must identify with specificity what particular
information is sought; how, if uncovered, it would preclude
summary judgment, and why it has not been previously obtained."
<u>Lunderstadt v. Colafella</u>, 885 F.2d 66, 71 (3d Cir. 1989)
(internal quotation omitted).  Although this motion comes before
discovery has been fully pursued, because Defendants have
characterized the motion as one for summary judgment, the
parties have filed statements and responses pursuant to Local
Civil Rule 56.1, and there has been submission by both Roche and
Defendants of materials outside the pleadings, the Court will
treat the motion as one for summary judgment.  <u>See</u> <u>Hilfirty v.
Shipman</u>, 91 F.3d 573, 578-79 (3d Cir. 1996); <u>see also</u> <u>Lunn v.
Prudential Ins. Co. of Am.</u>, 283 F. App'x 940, 943 (3d Cir.
2008).


**IV.  DISCUSSION**

Defendants move for summary judgment on Roche's claims
under five primary theories:  (1) Roche failed to exhaust

administrative remedies; (2) Pennsylvania law and not New Jersey law governs any right to subrogation; (3) the administrative code section cited by Roche does not apply to plans like the State Plan; (4) Roche's claims are barred by the voluntary payment doctrine; and (5) Roche's current suit is precluded by her initial involvement in the Minerley Action.  For the reasons that follow, the exhaustion argument is dispositive, and the Court need not reach the remaining arguments.

However, an important issue in this case are the laws and regulations in New Jersey regarding anti-subrogation and the way in which they came into being.  Thus, a brief discussion of those laws is necessary before going into the merits of Defendants' theories.

### A.    REGULATION OF SUBROGATION IN NEW JERSEY

The New Jersey Collateral Source Statute ("NJCSS") provides in relevant part that:

> In any civil action brought for personal injury or death, except actions brought pursuant to the provisions of P.L.1972, c. 70 (C. 39:6A-1 et seq.), if a plaintiff receives or is entitled to receive benefits for the injuries allegedly incurred from any other source other than a joint tortfeasor, the benefits, other than workers' compensation benefits or the proceeds from a life insurance policy, shall be disclosed to the court and the amount thereof which duplicates any benefit contained in the award shall be deducted from any award recovered by the plaintiff, less any premium paid to an insurer directly by the plaintiff or by any member of

the plaintiff's family on behalf of the plaintiff for
the policy period during which the benefits are payable.

N.J.S.A. 2A:15-97.

In 2001, the New Jersey Supreme Court held that the
collateral source rule embodied by the NJCSS does not "allow a
health insurer, who expends funds on behalf of an insured, to
recoup those payments through subrogation or contract
reimbursement when the insured recovers judgment against a
tortfeasor." Perreira v. Rediger, 169 N.J. 399, 403 (2001).
After determining that the statute did not permit subrogation,
the court determined that the NJCSS preempted an insurance
regulation on the books at the time that permitted subrogation
clauses in insurance contracts. Id. at 415-16.

Following Perreira, a group of individuals who had paid
money to their insurers demanded under subrogation clauses sued
their insurers to get their money back, along with an individual
who had not yet paid and was seeking to avoid payment. Levine
v. United Healthcare Corp., 402 F.3d 156, 159-60 (3d Cir. 2005).
As the Third Circuit noted, as a result of the Perreira
decision, "subrogation and reimbursement provisions are no
longer permitted in New Jersey health insurance policies." Id.
at 160. The court then went on to discuss the NJCSS, finding
that it "essentially reverses the common law collateral source
doctrine" by deducting the benefits the plaintiff has received

12

from the judgment ex ante.  Id. at 164.  The Third Circuit
ultimately held that the NJCSS was preempted by ERISA in its
application to ERISA-covered insurance plans, because the NJCSS
applied to any collateral source, and not only to insurance
sources.  Id. at 164–67.

The New Jersey Administrative Code was also updated
following Perreira but before Levine to reflect the policy of
anti-subrogation under the NJCSS.  The code now provides:

>    (a)  No policy or certificate providing group health
>         insurance shall limit or exclude health benefits as
>         the result of the covered person's sustaining a
>         loss attributable to the actions of a third party.
>    (b)  Insurers shall file with the Commissioner no later
>         than December 31, 2002, endorsements that remove
>         any subrogation and third party recovery provisions
>         contained in previously filed contract, policy or
>         certificate forms.

N.J.A.C. 11:4-42.10.

### B.  EXHAUSTION

In New Jersey, "[a]ll available and appropriate
administrative remedies generally should be fully explored
'before judicial action is sanctioned.'"  Burley v. Prudential
Ins. Co., 251 N.J. Super. 493, 498 (App. Div. 1991) (quoting
Abbott v. Burke, 100 N.J. 269, 296 (1985)).  "The 'exhaustion'
principle ensures that claims will be heard as a preliminary
matter by a body with expertise, a factual record may be created
for appellate review, and there is a change that the agency

decision may satisfy the parties and keep them out of court."
Id. (citing Atl. City. v. Laezza, 80 N.J. 255, 265 (1979)).
However, the exhaustion requirement is not absolute, and
exceptions exist.  Abbott, 100 N.J. at 298 (citations omitted).

Defendants move for summary judgment on the grounds that
the State Plan "expressly require[s] pre-suit exhaustion of
identified administrative remedies" and because "New Jersey
requires a second level of administrative appeal for
beneficiaries" of the State Plan.  (Defs.' Mot. Br. at 10–11.)
Roche responds that exhaustion is not required for the type of
claims asserted here and that any attempt to comply with the
administrative remedy process would be futile.  (Pl.'s Opp. at
9–19.)  Roche's arguments fail.

### 1.   EXHAUSTION IS REQUIRED

The Defendants assert that exhaustion was required by the
terms of both the plan and the New Jersey Administrative Code.
(Defs.' Mot. Br. at 10–11.)  Roche raises four challenges to
whether or not exhaustion applied:  (1) improper subrogation is
not something that needs administrative review; (2) she received
no notice of adverse benefits determination; (3) across-the-
board error does not require exhaustion; and (4) exhaustion is
not required in cases of breach of fiduciary duty.  These will
be addressed, and rejected, in turn.

14

### i.   CLAIMS OF IMPROPER SUBROGATION ARE ADVERSE BENEFIT DETERMINATIONS REQUIRING AN APPEAL

Roche first argues that no exhaustion requirement applied because the "provision on appeals does not contain any mechanism for administrative review of claims pertaining to improper subrogation liens and/or reimbursement demands." (Pl.'s Opp. at 12.)  However, the law of the Third Circuit is that subrogation challenges are claims for benefits due, and thus any challenge of the subrogation claim must be an appeal of an adverse benefits determination.

The handbook that accompanies the State Plan specifies that "[c]omplaints about adverse benefit determinations are called appeals." (State Plan Handbook (Goodrich Decl. Ex. 2 [Dkt. No. 10-2]; Torrisi Decl. Ex. 1 [Dkt. No. 35-1]) at 54.)  The handbook goes on to explain, "[a]dverse benefit determinations are decisions Aetna makes that result in denial, <u>reduction</u>, or termination of a benefit <u>or the amount paid for it</u>." (State Plan Handbook at 55 (emphases added).)  On this alone, a claim for subrogation by Aetna is a decision that results in a reduction of the amount paid for the benefit – effectively, reducing it from the $86,601.72 paid to zero – putting the subrogation claim in the plan's definition of adverse benefit determination.

15

The State Plan is part of the State Health Benefits Program ("SHBP"), established under the New Jersey State Health Benefits Program Act, N.J.S.A. 52:14-17.25, et seq.  Regulations for the operation and administration of the State Plan are contained in Title 17, Chapter 9 of the New Jersey Administrative Code. Following the appeals process for an adverse benefit determination before seeking judicial recourse is a requirement for the State Plan, both by the terms of the plan and by the regulatory and statutory scheme.  See Burley v. Prudential Ins. Co., 251 N.J. Super. 493, 498 (App. Div. 1991) ("[P]laintiff must first seek recourse by administrative appeal to the SHBC. Both sound principles of administrative law and the relevant contract provisions require the plaintiff to seek administrative relief before attempting to sue for damages."); see also Murray v. State Health Benefits Comm'n, 337 N.J. Super. 435, 439–40 (App. Div. 2001) (discussing the statutory and regulatory scheme behind the State Plan).

Additionally, it is clear that in the Third Circuit, claims by the insurance company for subrogation are equivalent to adverse benefits decisions.  The Third Circuit has held, albeit in the ERISA context, that where "plaintiffs claim that their ERISA plan wrongfully sought reimbursement of previously paid health benefits, the claim is for 'benefits due' . . . . because . . . such claims are more like challenges to the

16

'administration of benefits' than challenges to the 'quality of benefits received.'"  Levine, 402 F.3d at 163 (citing Pryzbowski v. U.S. Healthcare, Inc., 245 F.3d 266, 273 (3d Cir. 2001)). The court reasoned that because the insureds had paid back a portion of their benefits by acceding to the subrogation request, the insureds' claim was that they were entitled to have health insurance claims paid in full was a claim for benefits due.  Id.  Later, in Wirth v. Aetna U.S. Healthcare, the Third Circuit explicitly stated, "our holding in Levine applies squarely to the present facts and precludes [plaintiff]'s argument that seeking recovery of the [money] paid to extinguish Aetna's lien is not tantamount to seeking recovery of 'benefits due' to him.  Here, as in Levine, the actions undertaken by the insurer resulted in diminished benefits provided to the plaintiff insureds."  469 F.3d 305, 309 (3d Cir. 2006).

The facts and circumstances presented by Roche's complaint mirror those in Levine and Wirth.  Further, in a recent non-precedential opinion, the Third Circuit has squarely addressed the issue of whether Levine and Wirth apply to an exhaustion argument.  The court held that "[plaintiff]'s argument that Wirth and Levine are inapplicable because they addressed jurisdictional disputes rather than exhaustion is unavailing in light of our clear and direct statement that a subrogation claim

17

is for benefits due." Mallon v. Trover Sols. Inc., 613 F. App'x 142, 144 (3d Cir. 2015).

While these cases are all in the context of ERISA plans, Roche points to no case law that would show this definition of a subrogation claim is inapplicable to a non-ERISA plan, nor has Roche indicated any decisions of the New Jersey courts that would conflict with this holding.  Accordingly, her claims of improper subrogation are those that would be covered by the language of the plan and need to be appealed.

>            **ii.  LACK OF NOTICE REGARDING ADMINISTRATIVE**
>                 **APPEAL RIGHTS DOES NOT PRECLUDE REQUIRING**
>                 **ROCHE TO SEEK ADMINISTRATIVE REMEDIES**

Second, Roche claims that because Defendants failed to provide her with a notice of adverse benefit determinations which would trigger her obligations under the appeals provision of the State Plan, no duty to use the administrative mechanism was triggered. (See Pl.'s Opp. at 12–13.)  However, Roche points to no case law in support of her position.  Defendants counter that at least one court has found that failure to provide appropriate claims denial notices that include explanations of appeals rights did not excuse plaintiffs from following the administrative appeals process. (See Defs.' Reply Br. [Dkt. No. 37] at 12–13.)

The State Plan Handbook provides:

> Aetna will send you written notice of an adverse benefit determination.  The notice will give the reason for the decision and will explain what steps you must take if you wish to appeal.  The notice will also tell you about your rights to receive additional information that may be relevant to the appeal.

(State Plan Handbook at 55).  The letters informing Roche of the subrogation claim very clearly state why Defendants believe they are entitled to subrogation, so the reason for the decision is present.  (See Van Natta Decl. Ex. 1; Kannebecker Decl. Ex. 1.) The issue is only the lack of separate notice about the steps Roche needed to take to appeal the decision.

Defendants point to Neuner v. Horizon Blue Cross Blue Shield of N.J. (In re LymeCare, Inc.), 301 B.R. 662 (Bankr. D.N.J. 2003), in support of their position.  In Neuner, the plaintiffs admitted that there was an exhaustion requirement, but argued that because the insurance company "failed to notice the claimants of their rights to appeal when their claims were denied" the insurance company could not argue exhaustion as a defense.  301 B.R. at 675.  The court determined although the individual patients did not get the proper claims denial notices, all of the information regarding the appeals procedures was available to them in the plan handbook.  Id.  The court reasoned that "[t]he unfairness to the plaintiffs occasioned by this failure is mitigated by the fact that the Plan Handbook, which has been readily available to the plaintiffs, clearly

reflects the administrative course for appealing a denial of claims by [the insurer]." Id. at 677.  Ultimately, the court found that even though the insurer failed to raise exhaustion as a basis for dismissal "until shortly before the commencement of the trial," the plaintiffs were required to exhaust administrative remedies despite the lack of adequate claims denial notices.  Id. at 677-78.

The Court is persuaded by the reasoning of the bankruptcy court in Neuner.  Here, Roche has provided the relevant excerpt of the State Plan Handbook that governs appeals, demonstrating that she was in possession of this and able to review how to appeal a decision.  Roche does not point to any reason why she was unable to pursue an appeal with the Defendants once she became aware of the subrogation claim, other than arguing that she did not think she had to take an appeal and was not apprised of the appeal procedures in a formal letter.  Thus, this does not obviate the requirement to seek administrative review before filing suit.

### iii. THE SUBROGATION CLAIM IS NOT AN ACROSS-THE-BOARD ERROR

Roche, relying on Sportscare of America, P.C. v. Multiplan, Inc., Civ. No. 10-4414 (WJM), 2013 WL 1661018 (D.N.J. Apr. 17, 2013), argues that she is seeking a remedy of an across-the-board error, and so exhaustion is not needed.  (Pl.'s Opp. at

20

13-14.)  Roche's reliance on Sportscare is misplaced.  In

Sportscare, the plaintiff alleged that it was being paid at a

discounted rate by multiple insurance plans when it should have

been paid at a higher rate for about 2,500 claims.  2013 WL

1661018, at *5-6.  The court, in concluding that the plaintiff

did not have to exhaust administrative remedies for one of the

PPO networks, reasoned:

> This is not a case in which individual claims were denied
> at all.  Rather, this is a case where one entity made
> one decision, and that decision caused an across-the-
> board error in the way that a provider was paid.
> [Plaintiff] should not be required to appeal 2,500
> claims to dozens of different health insurance companies
> when the PPO is the sole entity that can fix that error."

Id. at *11.  The instant case is readily distinguishable from

Sportscare, as it does pertain to an individual claim.  Even the

putative class still does not make the case analogous to

Sportscare, because this is multiple decisions by the Aetna

Defendants with respect to each member of the putative class.

Further, Roche has not presented evidence or even an allegation

of a single across-the-board policy on subrogation and the

methods by which the Aetna Defendants determine whether they

will seek subrogation on a claim.  Thus, this theory does not

eliminate the need for exhaustion.

iv.   **THIS CASE DOES NOT PRESENT A BREACH OF FIDUCIARY DUTY**

Finally, Roche argues that exhaustion does not apply because she is asserting claims for breach of fiduciary duty. (Pl.'s Opp. at 14–15.)  However, both federal and state law hold "Plaintiffs cannot circumvent the exhaustion requirement by artfully pleading benefit claims as breach of fiduciary duty claims." Harrow v. Prudential Ins. Co. of Am., 279 F.3d 244, 253 (3d Cir. 2002); cf. Beaver v. Magellan Health Servs., Inc., 433 N.J. Super. 430, 442–44 (App. Div. 2013) (finding that claims framed as breach of fiduciary duty when "stripped to their barest essentials" were really just challenges to the decision of the State Health Benefits Commission).  Roche's submissions that she is not asserting a "benefits claim in disguise" are unpersuasive, as they rest on her earlier misconception that a subrogation claim is not one for benefits. Accordingly, Roche was required to follow the administrative exhaustion requirements of the plan.

2.   **ROCHE HAS FAILED TO DEMONSTRATE THAT EXHAUSTION WOULD BE FUTILE**

Roche argues in the alternative that even if exhaustion is required of her, it would be futile. (Pl.'s Opp. at 15–19.)[5]  In

---

[5] The Court also notes disappointment that Roche cites repeatedly to Carducci v. Aetna U.S. Healthcare, 247 F. Supp. 2d 596

determining futility, the Court must consider "(1) whether plaintiff diligently pursued administrative relief; (2) whether plaintiff acted reasonably in seeking immediate judicial review under the circumstances; (3) existence of a fixed policy denying benefits; (4) failure of the insurance company to comply with its own internal administrative procedures; and (5) testimony of plan administrators that any administrative appeal was futile." Harrow, 279 F.3d at 253.  The factors need not be given equal weight.  Id.  However, Roche cannot demonstrate that these factors weigh in her favor.

     As discussed above, it does appear that Defendants failed to comply with its own internal administrative procedures by failing to provide Roche with a separate notice of procedures for an appeal when making the subrogation claim.  However, as explained, the State Plan Handbook provided Roche with all of the information she needed on the procedures to take an appeal of the decision by Defendants to seek subrogation.

     Roche also argues that she acted reasonably in seeking prompt judicial review relying on "multiple letters" from Rawlings that "made it abundantly clear to [Roche] that [Defendants'] position with regard to the validity of the asserted subrogation/reimbursement demand would not change."

---

(D.N.J. 2005) without mentioning that this decision was reversed by the Third Circuit in Levine.

23

(Pl.'s Opp. at 17.)  However, Roche fails to acknowledge the multiple letters issued due to her attorney's admitted failure to meaningfully respond to or address any of the letters, aside from asserting the existence of an attorney-client relationship between himself and Roche.  (See Kannebecker Decl. Ex. 1-2.) Roche cannot fail to meaningfully respond to letters, and then claim that the multiple letters she received are evidence that Defendants would not be willing to consider her request.

With respect to the remaining factors, Roche does not demonstrate any of these weigh in her favor.  Roche has not attempted to pursue administrative relief at all, offers no testimony of anyone from Defendants that an administrative appeal is futile, and offers no evidence of a fixed policy of subrogation aside from her own allegations.  Roche attempts to construe Defendants' statements regarding the success of their subrogation claims program thus far as evidence of an across-the-board policy, (see Pl.'s Opp. at 18-19), but this is unpersuasive.  Therefore, Roche has not shown futility of exhaustion.

Defendants have successfully demonstrated that exhaustion does apply to the claims Roche makes here and Roche has unsuccessfully argued that any failure to exhaust is excused by futility.  Accordingly, Defendants' Motion will be granted and Roche's case dismissed.  In the event a court dismisses a case

24

for failure to exhaust, such a dismissal "do[es] not preclude later litigation on the merits of properly exhausted claims." D'Amico v. CBS Corp., 297 F.3d 287, 294 (3d Cir. 2002). Therefore, the dismissal will be without prejudice to Roche to renew her suit after pursuing administrative remedies, as she requests in the alternative. [6]

**V.   CONCLUSION**

For the foregoing reasons, Defendant's Motion will be granted on the grounds that Roche failed to exhaust, and the case dismissed without prejudice to be renewed upon Roche exhausting her administrative remedies.  An appropriate order accompanies this opinion.


Date:   February 29th , 2016

At Camden, New Jersey

                                 s/ Noel L. Hillman
                                 NOEL L. HILLMAN, U.S.D.J.

---

[6] The Court acknowledges that Roche has submitted an attorney declaration pursuant to Federal Rule of Civil Procedure 56(d) stating that she would like to obtain discovery on certain issues as this summary judgment motion was initially filed very early in the proceedings. (See Ercole Decl. [Dkt. No. 35-3] ¶ 16.)  However, the Court is not sure that the specified discovery requested in the Rule 56(d) Declaration would actually assist Roche.  Further, in light of the dismissal without prejudice, Roche may seek this discovery if she is unsuccessful in the administrative proceedings.